UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60932-CIV-ALTMAN/Hunt

CARLOS M. CUESTA,

    *Plaintiff*,

v.

PROGRESSIVE EXPRESS
INSURANCE COMPANY, *et al.*,

    *Defendants*.
_____/

## ORDER

The Plaintiff, Carlos Cuesta, was injured in a car crash. In an attempt to collect insurance benefits, Cuesta sued both of his insurers—Atlantic Specialty Insurance Company and Progressive Express Insurance Company—in state court. Cuesta attached to his state-court complaint a document that itemized his medical expenses and demanded over $300,000. The insurers thus had thirty days from the day on which they were served with that document to remove the state case to federal court. But they didn't file their notice of removal until almost six months later. Because that removal was far too late, we **GRANT** Cuesta's Motion to Remand [ECF No. 15].[1]

### THE FACTS

In August 2018, Cuesta—while working as an Uber driver—suffered serious injuries in an automobile collision. *See* State Court Records [ECF No. 9-1] at 72. At the time, Cuesta was insured by both Atlantic and Progressive. *Id.* at 7–8. After Cuesta failed to reach a resolution with Atlantic and Progressive over insurance benefits, Cuesta sued them in state court. *Id.* at 5. That action was filed on October 16, 2020. *Id.* Atlantic was served on November 2, 2020, *see* Notice of Service of Process [ECF

---

[1] The Motion ripened upon Atlantic's Response [ECF No. 18] (the "Response") and Cuesta's Reply [ECF No. 19] (the "Reply").

No. 6-2], and Progressive was served three days earlier, on October 29, 2020, *see* State Court Records at 90. The complaint alleged that Cuesta was a resident of Florida and that both insurers were foreign corporations. *Id.* at 5.

Cuesta attached several exhibits to his complaint. *Id.* at 14–75. One of those exhibits was a Civil Remedy Notice of Insurer Violations (the "CRN") Cuesta had filed with the Florida Department of Financial Services against Progressive. *Id.* at 62–65. The CRN included a detailed description of Cuesta's damages. *Id.* For example, the CRN noted that Cuesta had been making "approximately $5,000/month as an Uber driver" and that he "lost approximately $20,000 in past earnings because of his accident-related injuries." *Id.* It also itemized Cuesta's "past medical expenses" and pointed out that those expenses totaled over $320,000. *Id.* Here's the relevant paragraph:

> Carlos Cuesta's past medical expenses total approximately $322,172.16[.] The medical bills consist of the following: 1) Dr. Nicholas Suite $14,452.43; 2) North Broward Radiologists $2,263; 3) Stand-Up MRI of Fort Lauderdale $6,750; 4) Clearcare Medical Clearance $2,250; 5) Team Post-Op Shoulder Sling $208.90; 6) Miami Surgical Center's Shoulder Arthroscopy $21,900.13; 7) Anesthesia Professional Services $4,500; 8) Florida Spine & Joint Institute $158,620; 9) Associates MD Medical Group Clearance $2,696; 10) Lake Worth Surgical Center Lumbar Surgery $88,096.62; 11) Anesthesia Professional Services $5,750; 12) Davie Fire Department Rescue $1,000.42; 13) Goldson Spine & Reabilitation [sic] Pines $6,872; 14) Akumin Diagnostic Professionals $4,393.66; 15) Pathology Group of NW FL PA $411; 16) Phoenix Emergency Medicine of Broward LLC $1,708.

*Id.* The CRN was expressly incorporated into the complaint. *Id.* at 8. As a result, by November 2, 2020, Atlantic had in its possession an itemized list of Cuesta's damages—which totaled much more than $75,000.

Nevertheless, Atlantic didn't file a Notice of Removal until April 30, 2021—almost *six months* later. *See generally* Docket. Atlantic says that it removed the case at *that* point because—thirty days earlier—Cuesta served Atlantic with sworn answers to Progressive's interrogatories, which "identified and quantified Plaintiff's outstanding and future medical bills in excess of $445,000.00." Response at 2. Notably, Cuesta's answers to the interrogatories closely resembled the initial figures he'd provided

2

in the CRN, listing total medical expenses—from largely the same providers—totaling $359,983.83. *See* Answers to Interrogatories [ECF No. 1-5] at 4–6.

## THE LAW

To remove a case from state to federal court, a defendant must "file in the district court . . . a notice of removal." *See* 28 U.S.C. § 1446(a). The notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). But, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). The 30-day window in § 1446 is an "express statutory requirement for removal and the failure to comply 'can fairly render the removal defective and justify remand.'" *Ware v. Fleetboston Fin. Corp.*, 180 F. App'x 59, 62 (11th Cir. 2006) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999)); *see also* 28 U.S.C. § 1447(c) (providing that a plaintiff may move to remand a case "on the basis of any defect").

The Eleventh Circuit has frequently admonished lower courts to construe and apply the removal statute *strictly*. As the Eleventh Circuit has counseled, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly"— with all doubts resolved "in favor of remand to state court." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006) ("[S]tatutory procedures for removal are to be strictly construed." (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002))); *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."); *Countrywide Home Loans v. Warshaw*, 2017 WL 7733545, at *1 (S.D. Fla. June 15, 2017) ("Like removal statutes generally,

3

the time requirements imposed by the removal statute are to be strictly construed." (cleaned up)).[2]

## ANALYSIS

Atlantic's removal was untimely. To establish diversity jurisdiction, a plaintiff must show (1) that the amount in controversy exceeds $75,000 and (2) that the parties are diverse. *See* 28 U.S.C. 1332(a). The parties' sole dispute in our case concerns the *day* on which Atlantic *first* learned that the amount in controversy exceeded $75,000—because that's the day on which the 30-day window to remove was first triggered. Without beating around the bush, we think it's clear that the 30-day clock started to run as soon as Atlantic was served with the state-court complaint, because it's readily apparent from the face of Cuesta's state-court complaint that the amount in controversy exceeded $75,000. The complaint, after all, attached—and expressly incorporated—Cuesta's CRN, which provided a detailed, itemized list of treatments and medical expenses (down to the last penny). And, as that CRN made pellucid, Cuesta's past medical expenses *alone* amounted to some $322,172.16. Because Atlantic was served with Cuesta's complaint on November 2, 2020, its notice of removal—filed almost six months later—is very untimely, and the case must be remanded. *See Countrywide Home Loans v. Warshaw*, 2017 WL 7733545, at *1 (S.D. Fla. June 15, 2017) ("The Court concludes that Defendant's removal is untimely. Therefore, this case must be remanded . . . .").

Unsurprisingly, federal courts routinely remand cases in similar circumstances. Take, for instance, *Mead v. IDS Property Casualty Insurance Co.*, 2013 WL 12157838 (M.D. Fla. Nov. 26, 2013) (Bucklew, J.). In that case, the plaintiff sent a civil-remedy notice to the defendant after the case was filed. *Id.* at *5. That civil-remedy notice included a doctor's opinion that placed "a dollar amount of

---

[2] *See also Atl. Hosp. of Fla., LLC v. Gen. Star Indem. Co.*, 2010 WL 5313493, at *2 n.3 (S.D. Fla. Dec. 20, 2010) ("Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand."); 16 Moore's Federal Practice § 107.03 (2020) ("Although providing a federal forum is the goal of removal, the effect of removal is to deprive the state court of an action properly within its jurisdiction, which raises federalism concerns.").

$85,000 on the estimated cost of a spinal fusion that a physician found would be necessary if less-intrusive measures proved unsuccessful." *Id.* The court found that this was sufficient to trigger the 30-day window, noting "the Court sees no reason why a sufficiently detailed civil remedy notice cannot serve . . . to start the removal clock." *Id.* Having come to this conclusion, the court then remanded the case. *Id.* Cuesta's case is *even stronger* here. That's because Cuesta's CRN detailed *past* damages (rather than predicted future damages), cited over $300,000 in damages (instead of just $85,000), and included a detailed itemization of those expenses (rather than just an estimate). As in *Mead*, our case must be remanded.

And *Mead* isn't an aberration. Courts in our Circuit have universally recognized that a sufficiently detailed civil-remedy notice will trigger a defendant's 30-day deadline to remove. *See, e.g.*, *Erler v. Geico Gen. Ins. Co.*, 2017 WL 10058597, at *2 (M.D. Fla. Sept. 21, 2017) (Byron, J.) ("The Civil Remedies Notice put Defendant on notice that Plaintiff is seeking payment of the $300,000 policy limits."); *Hartford Steam Boiler Inspection & Ins. Co. v. Menada, Inc.*, 2017 WL 5891458, at *5 (S.D. Fla. Aug. 2, 2017) (Ungaro, J.) (finding that an estimate of damages in a civil-remedy notice was "enough to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000"); *Livolsi v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 7792572, at *2 (S.D. Fla. June 30, 2017) (Bloom, J.) (recognizing that "a civil remedy notice and pre-suit demand letter are sufficient to establish an amount in controversy when based on a plaintiff's own valuation of his or her claims"); *Black v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 4340281, at *2 (S.D. Fla. Oct. 22, 2010) (Cohn, J.) (remanding a case after an untimely removal because of the non-speculative figures presented in the plaintiff's "Civil Remedy Notice and Demand Letter").

Looking to escape this conclusion, Atlantic advances two arguments—both unpersuasive.

*First*, Atlantic—without addressing any of the cases we've just cited—claims that "a Civil Remedy Notice that is premised on a bad-faith-failure-to-settle claim under Fla. Stat. § 624.155 does

not furnish the basis for a determination of the amount in controversy for removal to federal court." Response at 5. For this proposition, Atlantic relies on *Jeffers v. State Farm Mutual Automobile Insurance Co.*, 2010 WL 11623391, at *4 (M.D. Fla. July 19, 2010) (Howard, J.). But that case is totally inapposite. There, the court found that the plaintiff's civil-remedy notice failed to show that the case met the amount-in-controversy threshold. *Id.* at *4–*5. The civil-remedy notice in that case, though, only referenced the value of the case by alleging that the defendant failed to attempt to settle in good faith "by making a settlement offer of only $10,000." *Id.* As that court rightly recognized, this in no way established that the plaintiff's damages exceeded $75,000. As the court explained: "There are, of course, thousands of choices exceeding $10,000 but still less than $75,000." *Id.* Our case is completely different. Cuesta's detailed CRN itemized damages far in excess of $75,000. *Jeffers* cannot guide us here.

*Second*, Atlantic points to the burden it faces—once it has removed a case—to establish diversity jurisdiction. Response at 4. In Atlantic's view, courts have "encouraged defendants to scrutinize their case carefully before seeking removal, which oftentimes necessitates awaiting responses to discovery." *Id.* That may be true—but it doesn't excuse Atlantic's decision to ignore unmistakable evidence that the amount-in-controversy requirement had been satisfied. Indeed, federal courts in our Circuit consistently rely on similarly detailed civil-remedy notices to find that removing defendants *had* established the amount in controversy. *See, e.g.*, *Wilt v. Depositors Ins. Co.*, 2013 WL 6195768, at *1 (M.D. Fla. Nov. 26, 2013) (Honeywell, J.) (relying in part on a civil-remedy notice to conclude that the amount-in-controversy threshold had been satisfied); *Sanchez v. LM Gen. Ins. Co.*, 2021 WL 2389431, at *2 (M.D. Fla. June 10, 2021) (Moody, J.) (same); *Rivera v. LM Gen. Ins. Co.*, 2020 WL 3884518, at *1 (M.D. Fla. July 9, 2020) (Barber, J.) (same). And, in fact, the Eleventh Circuit has said that, while precedent "justifies a defendant's caution in removing a diversity case," that precedent "cannot be used as an excuse for failing to put forth a diligent effort in ascertaining the amount of

damages sought in advance of the statutory deadlines." *Hajdasz v. Magic Burgers, LLC*, 805 F. App'x 884, 890 (11th Cir. 2020). We find it telling, in this respect, that the interrogatory answers Atlantic ultimately relied on in removing this case closely resemble the itemized damages it received on the day it was served with the state-court complaint.

\*   \*   \*

For this Court to "interpose its judgment [in this case] would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006). So we won't. The Court hereby

**ORDERS and ADJUDGES** that the Motion to Remand [ECF No. 15] is **GRANTED**. This case is **REMANDED** to the 17th Judicial Circuit in and for Broward County, Florida. The Clerk of Court shall **CLOSE** this case. Any pending deadlines are **TERMINATED**. Any other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of September 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record